PETER G. MUNROE *vs.* JOSIAH HOLMES, Jr., & others.

In an action against the owners of a whaling vessel, to recover the amount of a seaman's wages which the plaintiff had attached on trustee process, and which their general agent had thereupon, with the seaman's consent, retained and promised to pay to the plaintiff, an entry by the agent upon the book in which he kept the accounts of the owners, and which was at all times accessible to them, is competent evidence to show the amount so retained.

In such action, the general agent, who was also one of the owners, may be asked by the plaintiff, on cross-examination, if he has not frequently in the course of his agency, without objection from the other owners, accepted orders drawn upon the owners by seamen in favor of their creditors; and such evidence is competent, in connection with other evidence, for the purpose of showing the extent of his authority.

Authority in an agent, who was one of the owners of a whaling vessel, to bind the other owners by a promise to pay the amount of a seaman's wages, with his consent, to one of his creditors, who had attached the same on trustee process, may be inferred from proof of a general agency to act for the vessel, and to settle with the seamen, without proof of special authority.

CONTRACT, brought by the administrator of R. L. Barstow, against the owners of the whaling bark Brewster, to recover the sum of $229.62, being the amount of a claim against one Welsh, a seaman, on which the plaintiff had attached his wages in the hands of the defendants on a trustee process, and which the defendants thereupon, with the consent of Welsh, promised to pay.

At the trial in the superior court, before *Morton*, J., it was admitted that the defendants were owners of the bark, and that Holmes, one of the defendants, was its general agent, and made the promise on which the suit was brought, under the circumstances above set forth. The only question now material was as to his authority to bind the other owners by this promise.

The plaintiff introduced in evidence, under objection, a book of accounts of the defendants, kept by Holmes, and at all times accessible to them, containing the accounts of the vessel, and with the owners and crew; and this book contained, on the debit side of the account with Welsh, an entry as follows: "1860, 9 mo., 17. Am't of Est. R. L. Barstow's acc't. $229. 62." This entry was used to show the authority of Holmes, and to prove other points of the case.

The bill of exceptions further recited that "the said Holmes testified that he had no conversation with his co-owners in regard to this subject; that the only owners, except himself and his brother, who knew anything of the settlement in question, were J. and W. R. Wing, and they simply knew that he had retained the amount in suit; that, so far as he recollected, no owners except Harlow and LeBaron had been in his office where they might have seen the book of the Brewster accounts above referred to; that the owners of the Brewster had never had any meeting or given him any particular instructions since he had been agent; that he was general agent of the vessel to select her officers and crew, to procure her supplies and outfit, to pay bills against the vessel, to settle with the seamen upon their return, and generally to attend to all the business of the vessel, and that he had the sole management of the affairs of the vessel. He also testified, against the objection of the defendants to its competency, that he had frequently in the course of his agency, without objection by the owners, accepted orders drawn on the owners by seamen in favor of persons who had furnished them supplies or outfits, and paid the same at maturity, though more frequently such orders were not accepted by him, but left with him and subsequently paid."

There was other evidence as to the extent of the authority of Holmes; but it was not contended by the plaintiff that the owners gave any special authority to him to make the promise in question.

The defendants requested the court to rule that there was no evidence competent to prove the authority alleged. The judge declined to do so, and instructed the jury that it was for them to determine the extent of the authority conferred upon Holmes by the defendants, and if the evidence satisfied them that he was authorized to make the settlement and promise relied upon, the defendants were liable.

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*R. C. Pitman*, for the defendants.

*T. M. Stetson*, for the plaintiff.

DEWEY, J. 1. The entry on the defendants' book was compe-tent evidence for the plaintiff. It had a tendency to show the amount in their hands on account of Welsh, for which they might be chargeable, and thus to furnish the basis for the al-leged contract to pay that amount to his creditors; and such entry, if made by one authorized to make a contract to that effect, would indicate the assumption of the payment of that sum to the creditor of Welsh, or at least the withholding of so much for that purpose.

2. As to the testimony of Holmes, as to his having, in the course of his agency, without objection from the owners, some-times accepted orders drawn on the owners by seamen in favor of persons who had furnished them supplies and outfits, and his having paid the same at maturity : As we understand the case, Holmes was called by the defendant as a witness to disprove the agency, and was himself one of the defendants. As a por-tion of the cross-examination, under the large liberty allowed in such cases, we think it was competent to ask the witness as to his acts in this respect. As evidence in chief for the plaintiff, such evidence of acts of that character would not establish the liability of the defendants. *Taber* v. *Cannon*, 8 Met. 459. *Gould* v. *Norfolk Lead Co.* 9 Cush. 338.

But although this be so, yet the question further remains, whether the evidence was not legally competent as bearing upon the extent of the agency conferred on Holmes. If not further confirmed and extended it was insufficient, but with other facts showing a general agency to manage the financial affairs of the company as connected with seamen's wages, it might have some tendency to show such authority to act in the present case.

3. As to submitting to the jury to determine from the evi-dence what was the extent of the authority conferred upon Holmes : It was proper to submit this question to the jury ; but the defendants had the right to proper instructions from the court in matter of law, and if such instructions were asked for and not given, the verdict must be set aside. *Temple* v *Pomroy*, 4 Gray, 131.

The question then recurs as to what should have been the ruling in matter of law. Could Holmes, under his agency, as shown by the evidence, enter into this contract with the plaintiff? Clearly such agency would not authorize Holmes to give negotiable notes and accept negotiable drafts on account of the company, as was held in *Taber* v. *Cannon*, and other cases cited. But he had authority to settle with seamen, and pay their dues from the moneys of the company in his hands. The pressure of the case is, that this was an executory undertaking to pay money to a third person, thus creating a creditor to the company in the person of one who had furnished no materials or labor appertaining to the business of the company. This can only be justified as within the authority of the agent under the peculiar circumstances of the case, arising from the suit at law against Welsh, their debtor, in which they were summoned as trustees. As already remarked, Holmes was authorized to pay the wages of the seaman, and this money was due to Welsh. Its payment to him personally was interdicted by force of the trustee process, and the same was held to respond to the suit of the plaintiff. In this state of the case, the agent was, with the consent of Welsh, clearly authorized to pay over the money to the plaintiff, and discharge the trustee process. In lieu thereof, the plaintiff took the stipulation of the company through their agent to pay the same to the plaintiff, and in consideration thereof discharged the trustee process against the defendants. The law having, by force of the trustee process, given the plaintiff the right to receive this sum of money after judgment in that suit, and there being no defence for either principal or trustees, it would seem reasonable that their general agent, acting for the company, might bind the company to do what they would without his agency have been required to do, if the suit had proceeded to judgment. Under these circumstances, the jury might properly find the authority of Holmes to charge the defendants with payment of this sum

*Exceptions overruled.*